Joaquin Rene Nolet #354464
2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626-3912
Phone: (888) 615-6765
Fax: (888) 660-8874
E-mail: joaquinnolet@gmail.com

Attorney for Plaintiff, Sunshine Eileen Pritchard as Trustee of the Carrol Family Trust Dated January 18, 1973

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| SUNSHINE EILEEN PRITCHARD as Trustee of the Carrol Family Trust Dated January 18, 1973, and individually as successor-in-interest,<br><br>Plaintiffs,<br><br>v.<br><br>NEWREZ, LLC F/K/A NEW PENN FINANCIAL, LLC, DBA SHELLPOINT MORTGAGE SERVICING;and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO. 5:25-cv-03356-JGB-SP**<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:**<br><br>1. VIOLATION OF CIV. CODE § 2924.9;<br>2. WRONGFUL FORECLOSURE;<br>3. BREACH OF CONTRACT<br>4. PROMISSORY ESTOPPEL;<br>5. UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF. CODE § 17200, ET SEQ.;<br>6. CANCELLATION OF WRITTEN INSTRUMENTS, CIV.CODE § 3412;<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Sunshine Eileen Pritchard as Trustee of the Carrol Family Trust Dated January 18, 1973 ("PLAINTIFF"), by and through their counsel, alleges as follows in her First Amended Complaint:

## PARTIES

1. PLAINTIFF Sunshine Eileen Pritchard as Trustee of the Carrol Family Trust Dated January 18, 1973, is at all relevant times mentioned herein was, the rightful and lawful owner of real property commonly known as **73960 Samarkand Drive, Twentynine Palms, CA 92277** ("Subject Property"), is PLAINTIFF's residence and PLAINTIFF is the rightful owner of the Subject Property.

2. PLAINTIFF is informed and believe and based thereon allege Defendant Newrez, LLC., F/K/A New Penn Financial, LLC, dba. Shellpoint Mortgage Servicing ("SHELLPOINT DEFENDANT") is a Delaware, Limited Liability Company with its principal place of business of 601 Office Center Drive, Suite 100, Fort Washington, PA 19034. SHELLPOINT DEFENDANT conducts, and at all times mentioned herein conducted, business in San Bernardino County, California. Its agent for service of process is Corporation Service Company, CSC — Lawyers Incorporating Service. SHELLPOINT DEFENDANT is the purported current loan servicer and beneficiary of the mortgage loan that is the subject of the allegations complained of herein.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to Adir Int'l, Ltd. Liab. Co. v. Starr Indem. & Liab. Co., 994 F.3d 1032 (9th Cir. 2021), as this Court has jurisdiction over all causes of action except those given by statute to other trial courts.

4. This Court has personal jurisdiction over SHELLPOINT DEFENDANT pursuant to Cal Code Civ Proc § 410.10, as defendant conducted substantial business activities in California by servicing a mortgage loan secured by California real property, recording documents in California, and conducting a foreclosure sale in California.

5. This Court is the proper venue for this case pursuant to Cal Code Civ Proc § 392, as this action affects title to or possession of real property located in San Bernardino County, California.

///

## GENERAL AND FACTUAL ALLEGATIONS

6. On May 5, 2011, J.B. Carrol and Lois E. Carrol, as trustees of the Carrol Family Trust dated January 18, 1973, obtained a loan in the amount of $100,000 secured by real property located at 73960 Samarkand Drive, Twentynine Palms, California 92277.

7. A Deed of Trust securing the loan was recorded on May 17, 2011, as Instrument No. 2011-0198538 in the Official Records of San Bernardino County, California, with Fidelity National Title Insurance Company as trustee (**Exhibit A, Deed of Trust**).

8. J.B. Carrol died in December 2021.

9. Lois E. Carrol, the surviving trustee of the Carrol Family Trust, died on November 14, 2024 (**Exhibit B, Death Certificate**).

10. Plaintiff Sunshine Eileen Pritchard is the named successor-in-interest and successor trustee of the Carrol Family Trust and the rightful owner of the property located at 73960 Samarkand Drive, Twentynine Palms, California 92277.

11. On November 5, 2024, the Deed of Trust was assigned from Wells Fargo Bank, N.A. to defendant NewRez, LLC d/b/a ShellPoint Mortgage Servicing, and the assignment was recorded as Instrument No. 2024-0265021 in the Official Records of San Bernardino County, California (**Exhibit C, Assignment of Deed of Trust**).

12. Defendant failed to advise plaintiff in writing within thirty days that the Deed of Trust had been transferred or assigned to defendant, in violation of 15 USCS § 1641.

13. On January 28, 2025, plaintiff contacted defendant to advise defendant of her grandmother's passing.

14. Defendant stated that it could not speak to plaintiff without a death certificate.

15. Between February 14 and February 23, 2025, plaintiff provided defendant with the death certificate for Lois E. Carrol, plaintiff's identification, a name affidavit, a

copy of the Carrol Family Trust, the death certificate for J.B. Carrol, and plaintiff's birth certificate.

16. On February 24, 2025, defendant confirmed receipt of all documents and stated that defendant would be in touch with plaintiff.

17. On March 13, 2025, plaintiff sent two emails to defendant's loan servicing and loss mitigation departments requesting forbearance or deferment.

18. In the March 13, 2025, emails, plaintiff identified herself as the successor-in-interest and successor trustee of the Carrol Family Trust.

19. In the March 13, 2025, emails, plaintiff explained the delays in the succession process.

20. In the March 13, 2025, emails, plaintiff disclosed that she had suffered a medical emergency involving a triple umbilical hernia requiring component separation surgery and that she has disability status.

21. Plaintiff received no response from defendant to her March 13, 2025, forbearance and deferment requests.

22. In April 2025, plaintiff became seriously ill with a triple umbilical hernia requiring emergency component separation surgery.

23. Plaintiff was hospitalized for nearly a week following the emergency surgery in April 2025.

24. Plaintiff's recovery from the surgery took an extended period.

25. On April 21, 2025, defendant recorded a Notice of Default and Election to Sell Under a Deed of Trust as Instrument No. 2025-0089061 in the Official Records of San Bernardino County, California (**Exhibit "D" Notice of Default and Election to Sell Under a Deed of Trust**).

26. Defendant failed to provide plaintiff with written notice of foreclosure prevention alternatives within five business days after recording the Notice of Default.

27. The deadline for defendant to provide written notice of foreclosure prevention alternatives was April 28, 2025.

28. The Notice of Default recorded on April 21, 2025, lacks a declaration under penalty of perjury as required by Cal Code Civ Proc § 2015.5.

29. On April 25, 2025, plaintiff called defendant.

30. Defendant stated that it still needed a copy of plaintiff's birth certificate, despite plaintiff having already provided it and defendant having confirmed receipt on February 24, 2025.

31. Plaintiff re-sent her birth certificate to defendant.

32. Defendant indicated that an agent would contact plaintiff, but no agent ever contacted plaintiff.

33. Upon receiving the Notice of Default, plaintiff immediately contacted defendant.

34. Defendant refused to work with plaintiff, stating that she was not listed on the Deed of Trust, despite plaintiff having provided all requested documentation establishing her status as successor-in-interest and trustee.

35. In August 2025, plaintiff contacted defendant requesting help and a reinstatement figure.

36. Defendant stated that it needed a notarized name affidavit, despite plaintiff having already provided a name affidavit.

37. Defendant refused to help plaintiff.

38. On August 6, 2025, a Notice of Trustee's Sale was recorded as Instrument No. 2025-0186966 in the Official Records of San Bernardino County, California (**Exhibit "E", Notice of Trustee Sale**).

39. In August 2025, a Notice of Sale was posted on the property.

40. On September 5, 2025, the property was sold at public auction.

41. As of April 2024, the arrears on the loan were $8,700.

42. At the time of foreclosure, defendant claimed that approximately $100,000 was owed on the loan.

43. Plaintiff's grandparents, J.B. Carrol and Lois E. Carrol, paid over $900 per month on the mortgage payments.

44. The required monthly payment on the loan was only $630.

45. Due to the overpayments made by plaintiff's grandparents, the actual outstanding balance on the loan was approximately $60,000, not $100,000.

46. Had the correct balance been applied to the loan, the payments would have been current or nearly current.

47. The fair market value of the property at the time of foreclosure was $366,000.

48. The outstanding loan balance, correctly calculated, was approximately $60,000.

49. Plaintiff's equity in the property was approximately $306,000.

50. As a result of the foreclosure sale, plaintiff lost all equity in the property.

51. Plaintiff was potentially eligible for foreclosure prevention alternatives offered by defendant, including loan modification and forbearance.

52. At no time did defendant provide plaintiff with information about foreclosure prevention alternatives, loan modification options, or the process for applying for such alternatives.

53. Defendant's conduct was purposefully designed to cause delays in loss mitigation and loan modification, causing plaintiff to incur continuing interest charges, late fees, and ultimately foreclosure costs that eroded her equity in the property.

**FIRST CAUSE OF ACTION - VIOLATION OF CAL CIV CODE § 2924.9**

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 as if fully set forth herein. Defendant is a mortgage servicer.

55. Defendant NewRez, LLC d/b/a ShellPoint Mortgage Servicing is a mortgage servicer that offers foreclosure prevention alternatives to borrowers.

56. Defendant recorded a Notice of Default.

57. Defendant recorded a Notice of Default and Election to Sell Under a Deed of Trust as Instrument No. 2025-0089061 in the Official Records of San Bernardino County, California on April 21, 2025.

58. Plaintiff is a borrower as defined by Cal Civ Code § 2920.5., as she has stepped into the shoes of her grandparents J.B. Carrol and Lois E. Carrol under the Carrol Family Trust.

59. A narrow interpretation of "Borrower" c**onflicts with the remedial purpose of the Homeowner Bill of Rights (HBOR).**

60. California's Homeowner Bill of Rights ("HBOR") is a remedial statutory scheme intended to protect homeowners facing foreclosure. As the California Supreme Court has repeatedly held, remedial statutes must be **liberally construed** to effectuate their purpose. See *Valbuena v. Ocwen Loan Servicing, LLC*, 237 Cal. App. 4th 1267, 1272 (2015) (HBOR provisions "must be California's Homeowner Bill of Rights ("HBOR") is a remedial statutory scheme intended to protect homeowners facing foreclosure. As the California Supreme Court has repeatedly held, remedial statutes must be **liberally construed** to effectuate their purpose. See *Valbuena v. Ocwen Loan Servicing, LLC*, 237 Cal. App. 4th 1267, 1272 (2015) (HBOR provisions "must be interpreted in a manner that protects the rights of borrowers and promotes transparency in the foreclosure process").

61. Limiting "borrower" to the original mortgagor or trustor—undermines HBOR's core purpose by excluding the very individuals the Legislature sought to protect: **successors who inherit or otherwise acquire a home already in foreclosure distress**. Nothing in § 2924.9 suggests the Legislature intended to deny these protections to successors who step into the borrower's shoes and bear the full consequences of foreclosure.

62. **California law recognizes successors-in-interest as standing in the shoes of the borrower.** California courts routinely hold that successors-in-interest assume the rights and obligations of the original borrower in foreclosure-related contexts. See, e.g.:

*Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 80 F. Supp. 3d 1131, 1136 (D. Nev. 2015) (successor "steps into the shoes" of the borrower for purposes of foreclosure rights);*Civ. Code § 2920.5(e)* (recognizing successors as "borrowers" for HBOR purposes in other sections).

63. The Legislature has repeatedly amended HBOR to **expand**, not restrict, protections for successors. Restricting on the basis of **§ 2920.5(c)(1)'s "natural person" language is misplaced because a** successor-in-interest **is** a natural person when the successor is an individual. Plaintiff is not asserting standing as a corporate entity or a trust; she asserts standing as the individual who inherited and resides in the property. Concluding that Plaintiff is not a "natural person" because she is also a trustee is legally incorrect. A trustee's status does not erase her identity as a natural person. See *Estate of Bowles*, 169 Cal. App. 4th 684, 691 (2008) ("A trustee is a natural person acting in a representative capacity.").The statute requires the borrower to be a natural person—not that the person be acting solely in an individual capacity.

64. Defendant may argue the opposite, based on Marasigan *v. MidFirst Bank*, 2023 WL 3470128 (S.D. Cal. 2023), but *Marasigan* is non-binding, factually distinct and inconsistent with HBOR's remedial purpose. In *Marasigan*, the plaintiff never alleged she was eligible for foreclosure-prevention alternatives. Here, Plaintiff **did** seek such alternatives and was actively communicating with the servicer. Eligibility—not original borrower status—is the operative statutory requirement under § 2920.5(c)(1). Moreover, *Marasigan* did not address the broader statutory context, legislative history, or the interpretive rule requiring liberal construction of HBOR.

65. Depriving the Plaintiff of her status as "natural person" and her status of "Borrower" would lead to an absurd result that the Legislature could have not intended such that a servicer must provide foreclosure-prevention information to a borrower who died the day before the notice of default was recorded, but **not** to the surviving spouse, child, or heir who now owns and occupies the home.

66. This is an absurd result. California courts avoid statutory interpretations that produce absurd or unreasonable outcomes. *People v. Leiva*, 56 Cal. 4th 498, 506 (2013). The Legislature enacted HBOR to prevent this type of foreclosure ambush.

67. Section 2929.5(e)(1) Demonstrates Legislative Intent to Include Successors as Borrowers Across HBOR. A fundamental canon of statutory interpretation is that **related statutes must be read harmoniously**.

68. HBOR is a unified statutory scheme. When the Legislature defines "borrower" to include successors in one HBOR section, that definition informs the meaning of "borrower" throughout the scheme unless expressly contradicted. Nothing in § 2924.9 excludes successors. Nothing in § 2920.5(c)(1) prohibits successors. And the Legislature has repeatedly expanded HBOR to protect successors. Isolating § 2924.9 from the rest of HBOR is not what the Legislature intended.

69. Plaintiff Has Standing Because She Is "Potentially Eligible" for Foreclosure Prevention Alternatives. Section 2920.5(c)(1) defines a borrower as a natural person who is: (i) a mortgagor or trustor, and (ii) "potentially eligible" for foreclosure-prevention alternatives. Plaintiff satisfies both: She is the successor to the trustor's interest and therefore stands in the trustor's shoes, and she sought and was eligible for foreclosure-prevention alternatives. Eligibility, not original borrower status, is the operative requirement.

70. The Legislature enacted HBOR to curb abusive servicer practices and ensure homeowners receive timely information about foreclosure alternatives. Excluding successors—who are often the most vulnerable homeowners—defeats that purpose. Courts must interpret HBOR in a manner that protects homeowners and promotes transparency. The court's narrow reading does the opposite.

71. Plaintiff holds an equitable and legal interest in the subject property, which is encompassed under the definition of a borrower. Plaintiff became the successor-in-interest and trustee of the property following the passing of Lois E. Carrol, who was the last surviving original trustee of the Carrol Family Trust. Plaintiff has undertaken

responsibilities related to the loan and property, actively communicating with defendant, and providing all requested documentation to establish her status. Despite this, defendant persisted in denying acknowledgment and proceeded with actions that disregarded her legitimate borrower status.

72. Plaintiff is the successor-in-interest and successor trustee of the Carrol Family Trust, which obtained the loan secured by the Deed of Trust.

73. Plaintiff provided defendant with all requested documentation establishing her status as successor-in-interest and trustee, including the death certificate for Lois E. Carrol, plaintiff's identification, a name affidavit, a copy of the Carrol Family Trust, the death certificate for J.B. Carrol, and plaintiff's birth certificate.

74. Defendant confirmed receipt of all documents on February 24, 2025.

75. Defendant failed to send plaintiff written communication regarding foreclosure prevention alternatives within five business days after recording the Notice of Default.

76. The Notice of Default was recorded on April 21, 2025.

77. Defendant was required to send plaintiff written communication regarding foreclosure prevention alternatives by April 28, 2025.

78. Defendant failed to send plaintiff any written communication regarding foreclosure prevention alternatives by April 28, 2025, or at any time thereafter.

79. The written communication was required to include that plaintiff may be evaluated for a foreclosure prevention alternative, whether an application is required, and the means and process for obtaining an application.

80. Defendant never provided plaintiff with any information stating that she may be evaluated for a foreclosure prevention alternative.

81. Defendant never provided plaintiff with any information regarding whether an application for foreclosure prevention alternatives was required.

82. Defendant never provided plaintiff with any information regarding the means and process for obtaining an application for foreclosure prevention alternatives.

83. Plaintiff suffered damages as a result of defendant's failure.

84. Plaintiff lost the opportunity to pursue foreclosure prevention alternatives that could have allowed her to retain the property.

85. Plaintiff lost her home and all equity in the property valued at $366,000, with an outstanding loan balance of approximately $60,000, resulting in loss of equity of approximately $306,000.

86. The property was sold at foreclosure on September 5, 2025.

87. Defendant's violation was material.

88. Defendant's failure to provide any written communication regarding foreclosure prevention alternatives within five business days after recording the Notice of Default was a material violation.

89. Defendant's violation was not corrected prior to recordation of the trustee's deed upon sale.

90. Defendant never provided plaintiff with written communication regarding foreclosure prevention alternatives at any time prior to the foreclosure sale on September 5, 2025.

91. Defendant never corrected or remedied its violation prior to the recordation of the trustee's deed upon sale.

**SECOND CAUSE OF ACTION – WRONGFUL FORECLOSURE**

92. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 91 as if fully set forth herein.

93. Defendant caused an illegal, fraudulent, or willfully oppressive sale of the property.

94. Defendant recorded a Notice of Default on April 21, 2025, without complying with the requirements of Cal Civ Code § 2924.9.

95. Defendant failed to provide plaintiff with written notice of foreclosure prevention alternatives within five business days after recording the Notice of Default.

96. Defendant failed to comply with federal mortgage servicing regulations requiring communication with successors-in-interest.

97. Defendant refused to work with plaintiff despite her providing all requested documentation establishing her status as successor-in-interest and trustee.

98. Defendant failed to apply the correct outstanding balance to the loan, claiming $100,000 was owed when only approximately $60,000 was owed due to overpayments by plaintiff's grandparents.

99. The Notice of Default recorded on April 21, 2025, lacks a declaration under penalty of perjury as required by Cal Code Civ Proc § 2015.5, rendering it void ab initio.

100. The sale was conducted pursuant to a power of sale in the Deed of Trust.

101. The foreclosure sale on September 5, 2025, was conducted pursuant to the power of sale contained in the Deed of Trust recorded on May 17, 2011.

102. Defendant violated applicable foreclosure prevention statutes or regulations.

103. Defendant's foreclosure sale on September 5, 2025, was illegal because it was conducted in violation of Cal Civ Code § 2924.9 and other applicable foreclosure prevention statutes.

104. Defendant's conduct in refusing to communicate with plaintiff, repeatedly requesting documents she had already provided, and refusing to provide foreclosure prevention alternatives was willfully oppressive.

105. Plaintiff was prejudiced and harmed by the foreclosure sale.

106. Plaintiff lost her home and all equity in the property valued at $366,000, with an outstanding loan balance of approximately $60,000, resulting in loss of equity of approximately $306,000.

107. Plaintiff is excused from tendering the amount of the secured indebtedness.

108. Plaintiff is excused from tendering the amount of the secured indebtedness because defendant violated Cal Civ Code § 2924.9 by failing to provide foreclosure prevention alternatives.

109. Plaintiff is excused from tendering the amount of the secured indebtedness because the accounting on the loan was incorrect, and had the correct balance been applied, the payments would have been current or nearly current.

110. Plaintiff is excused from tendering the amount of the secured indebtedness because she was eligible for loss mitigation and foreclosure prevention alternatives that would have allowed her to avoid foreclosure.

111. Plaintiff is excused from tendering the amount of the secured indebtedness because defendant's violations of law rendered the foreclosure sale void or voidable.

**THIRD CAUSE OF ACTION - BREACH OF CONTRACT**

112. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 111 as if fully set forth herein.

113. A valid contract exists between plaintiff and defendant.

114. A valid contract exists between plaintiff and defendant in the form of the Deed of Trust recorded on May 17, 2011, and the promissory note secured thereby.

115. Plaintiff, as successor-in-interest and trustee of the Carrol Family Trust, succeeded to the rights and obligations under the Deed of Trust and promissory note.

116. A successor in interest can enforce the obligations of the servicer under federal law, particularly RESPA and its implementing regulations, which mandate that confirmed successors in interest be treated as borrowers for purposes of servicing and related protections. This authority is further supported by judicial interpretations within the 9th Circuit that clarify the scope of servicing obligations under RESPA. § 1024.31 Definitions., Supplement I to Part 1024 — Official Bureau Interpretations, § 1024.30 Scope, Medrano v. Flagstar Bank, FSB, 704 F.3d 661.

117. Plaintiff performed her obligations under the contract or was excused from performance.

118. Plaintiff provided all requested documents to establish her status as successor-in-interest and trustee.

119. Plaintiff requested forbearance and deferment on March 13, 2025.

120. Plaintiff attempted to communicate with defendant regarding loss mitigation options on multiple occasions.

121. Defendant breached the contract.

122. The contract required defendant to comply with all applicable laws and regulations governing mortgage servicing, including providing foreclosure prevention alternatives as required by Cal Civ Code § 2924.9.

123. The contract required defendant to accurately account for payments made on the loan.

124. The contract required defendant to communicate with plaintiff as the successor-in-interest and trustee.

125. Defendant breached the contract by failing to apply the correct outstanding balance to the loan, claiming $100,000 was owed when only approximately $60,000 was owed due to overpayments by plaintiff's grandparents.

126. Defendant breached the contract by failing to provide foreclosure prevention alternatives as required by Cal Civ Code § 2924.9 and as required by the terms of the contract.

127. Defendant breached the contract by refusing to work with plaintiff despite her providing all requested documentation.

128. Defendant breached the contract by failing to provide a reinstatement figure or assumption options to plaintiff.

129. Defendant breached the contract by failing to respond to plaintiff's requests for forbearance and deferment.

130. Defendant breach the contract through failure to honor the implied covenant of good faith included in all contracts in this jurisdiction. When alleging a breach of the implied covenant of good faith and fair dealing, it is not strictly necessary to identify a specific contractual provision. The implied covenant is inherent in every contract and prohibits one party from unfairly frustrating the other party's right to receive the benefits of the agreement. For example, in, Steines v. Crown Media United States, LLC, 2018

U.S. Dist. LEXIS 205325. the court noted that a breach of a specific provision is not required to state a claim for breach of the implied covenant, but the scope of the covenant is limited by the purposes and express terms of the contract . Steines v. Crown Media United States, LLC, 2018 U.S. Dist. LEXIS 205325.

131. Plaintiff suffered damages as a result of defendant's breach.

132. Plaintiff lost her property and the equity she had in it, approximately $306,000.

**FOURTH CAUSE OF ACTION - PROMISSORY ESTOPPEL**

133. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 132 as if fully set forth herein.

134. Defendant made a clear and unambiguous promise to plaintiff.

135. On February 24, 2025, defendant confirmed receipt of all documents plaintiff had submitted to establish her status as successor-in-interest and executor of the estate.

136. Defendant promised that if plaintiff submitted all the documents requested to establish her status as successor-in-interest and executor of the estate, defendant would be able to speak with her and proceed with her rights as successor-in-interest and executor.

137. Defendant's confirmation on February 24, 2025, that it had received all documents and would be in touch constituted a promise to work with plaintiff regarding the loan.

138. Plaintiff relied on defendant's promise.

139. Plaintiff provided all requested documents, including death certificates, trust documents, identification, name affidavit, and birth certificate.

140. Plaintiff requested forbearance and deferment on March 13, 2025, in reliance on defendant's promise to work with her.

141. Plaintiff attempted to communicate with defendant regarding loss mitigation options on multiple occasions in reliance on defendant's promise.

142. Plaintiff's reliance was reasonable and foreseeable.

143. Defendant specifically requested the documents and promised to be in touch after receiving them.

144. It was reasonable for plaintiff to rely on defendant's promise that it would work with her after she provided all requested documentation.

145. It was foreseeable to defendant that plaintiff would rely on its promise and would expect to be considered for foreclosure prevention alternatives.

146. Plaintiff was injured by defendant's breach of the promise.

147. Plaintiff lost the opportunity to avoid foreclosure because defendant refused to work with her despite its promise.

148. Plaintiff lost her property and all equity in the property, approximately $306,000.

## FIFTH CAUSE OF ACTION - UNFAIR BUSINESS PRACTICES IN VIOLATION OF CAL BUS & PROF CODE § 17200

149. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 148 as if fully set forth herein.

150. Defendant engaged in unlawful, unfair, and fraudulent business acts or practices.

151. Defendant's conduct was unlawful.

152. Defendant violated Cal Civ Code § 2924.9 by failing to provide foreclosure prevention alternatives within five business days after recording the Notice of Default.

153. Defendant violated federal mortgage servicing regulations by failing to promptly facilitate communication with plaintiff as a successor-in-interest.

154. Defendant violated 15 USCS § 1641 by failing to advise plaintiff in writing within thirty days that the Deed of Trust was transferred to defendant.

155. Defendant violated Cal Code Civ Proc § 2015.5 by recording a Notice of Default that lacks a declaration under penalty of perjury.

156. Defendant's conduct was unfair.

157. Defendant implemented a severely flawed loss mitigation review process in which plaintiff was not afforded a loan modification review despite being eligible.

158. Defendant purposefully caused lengthy delays in loss mitigation and loan modification to cause plaintiff to incur continuing interest charges, late fees, and foreclosure costs.

159. Defendant ignored plaintiff's communications and failed to communicate regarding her financial distress.

160. Defendant refused to work with plaintiff despite her providing all requested documentation.

161. Defendant failed to apply the correct outstanding balance to the loan.

162. Defendant's conduct was fraudulent.

163. Defendant made false and misleading statements regarding what documents were needed and what plaintiff needed to do to satisfy defendant's demands.

164. On April 25, 2025, defendant stated it still needed plaintiff's birth certificate despite having confirmed receipt of that document on February 24, 2025.

165. In August 2025, defendant stated it needed a notarized name affidavit despite plaintiff having already provided a name affidavit.

166. Defendant's repeated requests for documents plaintiff had already provided were likely to deceive plaintiff and did deceive plaintiff into believing she had not provided sufficient documentation.

167. Plaintiff suffered economic injury.

168. Plaintiff lost her property and the equity she had in it, approximately $306,000.

169. Plaintiff's economic injury was caused by defendant's unlawful, unfair, and fraudulent business practices.

170. Had defendant complied with Cal Civ Code § 2924.9 and provided foreclosure prevention alternatives, plaintiff could have avoided foreclosure.

171. Had defendant properly communicated with plaintiff and processed her requests for forbearance and deferment, plaintiff could have avoided foreclosure.

172. Had defendant applied the correct loan balance, the loan would have been current or nearly current, and foreclosure would not have been necessary.

173. Defendants' behavior is also detrimental to the public in general because the sort of conduct describe above is generalized and has negatively affected large groups of borrowers (**Exhibit F, AG Healey…)**

## SIXTH CAUSE OF ACTION - CANCELLATION OF WRITTEN INSTRUMENTS PURSUANT TO CAL CIV CODE § 3412

174. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 173 as if fully set forth herein.

175. There is a reasonable apprehension that if left outstanding, certain written instruments may cause serious injury to plaintiff.

176. The Notice of Default recorded as Instrument No. 2025-0089061 on April 21, 2025, if left outstanding, may cause serious injury to plaintiff.

177. The Notice of Trustee's Sale recorded as Instrument No. 2025-0186966 on August 6, 2025, if left outstanding, may cause serious injury to plaintiff.

178. The Trustee's Deed Upon Sale recorded on or after September 5, 2025, if left outstanding, may cause serious injury to plaintiff.

179. The instruments are void or voidable.

180. The Notice of Default is void or voidable because it was recorded in violation of Cal Civ Code § 2924.9, as defendant failed to provide foreclosure prevention alternatives.

181. The Notice of Default is void ab initio because it lacks a declaration under penalty of perjury as required by Cal Code Civ Proc § 2015.5.

182. The Notice of Default is voidable because it was recorded in violation of federal mortgage servicing regulations.

183. The Notice of Default is voidable because the amounts stated therein are incorrect, as the outstanding balance was approximately $60,000, not $100,000.

184. The Notice of Trustee's Sale is void or voidable because it was based on the void or voidable Notice of Default.

185. The Trustee's Deed Upon Sale is void or voidable because it was based on the void or voidable Notice of Default and Notice of Trustee's Sale.

186. If these instruments are left outstanding, they will cause serious injury to plaintiff.

187. The instruments cloud plaintiff's title to the property.

188. The instruments prevent plaintiff from recovering the property or obtaining damages.

189. The instruments cause continuing harm to plaintiff's credit and financial standing.

190. Plaintiff has a reasonable belief that these instruments are voidable or void ab initio.

191. Plaintiff believes the instruments are void or voidable based on defendants' violations of Cal Civ Code § 2924.9, Cal Code Civ Proc § 2015.5, and federal mortgage servicing regulations.

192. Plaintiff believes the instruments are void or voidable based on the incorrect loan balance stated in the Notice of Default.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter judgment in her favor and against defendant as follows:

1. Actual economic damages against defendant in the amount of $306,000, representing plaintiff's lost equity in the property.

2. Statutory damages against defendant pursuant to Cal Civ Code § 2924.12 in the amount of the greater of treble actual damages or fifty thousand dollars ($50,000) for intentional, reckless, or willful violation of Cal Civ Code § 2924.9.

3. Compensatory damages against defendant for wrongful foreclosure in the amount to be proven at trial, estimated at $306,000 representing plaintiff's lost equity in the property.

4. Compensatory damages against defendant for breach of contract in the amount to be proven at trial, estimated at $306,000 representing plaintiff's lost equity in the property.

5. Compensatory damages against defendant for promissory estoppel in the amount to be proven at trial, estimated at $306,000 representing plaintiff's lost equity in the property.

6. Restitution and disgorgement against defendant of all amounts obtained through defendant's unlawful, unfair, and fraudulent business practices in violation of Cal Bus & Prof Code § 17200, to be determined at trial.

7. An order canceling and setting aside the Notice of Default recorded as Instrument No. 2025-0089061, the Notice of Trustee's Sale recorded as Instrument No. 2025-0186966, and the Trustee's Deed Upon Sale, pursuant to Cal Civ Code § 3412.

8. An order enjoining defendant from taking any further action to enforce the foreclosure sale or to dispossess plaintiff from the property.

9. Reasonable attorney's fees and costs incurred in prosecuting this action against defendant, pursuant to Cal Civ Code § 2924.12 and Cal Code Civ Proc § 1032.

10. Pre-judgment and post-judgment interest against defendant as allowed by law, calculated from the date of the wrongful foreclosure sale until the date of judgment and thereafter.

11. Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: February 13, 2026 CDLG, PC

BY: */s/ Joaquin R. Nolet*
Joaquin Rene Nolet, Esq.,
Attorney for Plaintiff, Sunshine Eileen Pritchard as Trustee of the Carrol Family Trust Dated January 18, 1973